# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA
# WEST PALM BEACH DIVISION

| | |
|---|---|
| PARGH TRAVELS, LLC, | Civil Action No. 9:15-cv-80884 |
| Plaintiff, | |
| | **COMPLAINT** |
| v. | |
| GOSS RV INC.; KEN GOSS, individually; and BEN CARTER, individually, | |
| Defendants. | |

Plaintiff, PARGH TRAVELS, LLC ("Plaintiff" or "Pargh Travels"), a Florida limited liability company, by and through its undersigned counsel, sues the Defendants, GOSS RV INC. ("Goss RV"), KEN GOSS, individually ("KGoss"), and BEN CARTER, individually ("Carter") (Goss RV, KGoss, and Carter are collectively referred to as "Defendants"), and alleges as follows:

## INTRODUCTION

1. This is a tort action which seeks damages for fraud and negligent misrepresentation in connection with Defendants' inducement of Pargh Travels to enter into a motorhome rental agreement related to the rental of a 2011 Prevost XL DB Motorhome recreational vehicle (the "Vehicle") and provision of various services attendant to said rental including but not limited to a luxury vehicle and the highest quality and safest locations available, along with the provision of other travel-related services, to Pargh Travels for a contemplated cross-country trip.

2. Goss RV never intended to perform these contractual obligations, which it induced Pargh Travels to enter into by making a series of material representations more fully set forth below, which were false and which Pargh Travels relied upon to its detriment.

## THE PARTIES

3. Plaintiff Pargh Travels is a limited liability company organized under the laws of the State of Florida. Pargh Travels' main office is located at 11308 Caladium Lane, Palm Beach Gardens, Florida 33418.

4. Defendant Goss RV is a corporation existing under the laws of the State of Delaware, with its principal place of business located at 1825 Sugarloaf Club Drive, Duluth, Georgia 30097.

5. Defendant KGoss is a citizen of the State of Georgia who, upon information and belief, resides in Gwinnett County, Georgia.

6. Defendant Carter is a citizen of the State of Georgia who, upon information and belief, resides in Gwinnett County, Georgia.

## JURISDICTION AND VENUE

7. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 by virtue of complete diversity of citizenship, insofar as Pargh Travels was, and is at the time of the filing of the Complaint, a citizen of the State of Florida, by virtue of the fact that both of its two members, Andrew Pargh, who owns a 1% ownership interest in Pargh Travels, and ATOAL, LLC, a limited liability company organized under the laws of the State of Florida, and which owns a 99% membership interest in Pargh Travels, including all of the individual members of ATOAL, LLC, are residents and citizens of the State of Florida.  Additionally, Goss RV was, and is at the time of the filing of the Complaint, a citizen of the State of Delaware with its principal place of business being located at 1825 Sugarloaf Club Dr., Duluth, Georgia 30097, KGoss, upon information and belief, resides in Gwinnett County, Georgia, and Carter, upon information and belief, resides in Gwinnett County, Georgia.

8. The amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, attorneys' fees and costs.

9. The Court has jurisdiction over the Defendants pursuant to Florida Statutes §§ 48,193(1)(a)(1), 48.193(1)(a)(2), 48.193(1)(a)(6)(a), and 48.193(2), Florida's Long Arm Statute, as Defendants have:

   a. operated, conducted, engaged in, or carried on a business in this state, or has an office or agency in this state;

   b. committed a tortious act within the State of Florida which has caused injury to Plaintiff within the State; or,

   c. in the alternative, Defendants have caused injury to persons or property within this State arising out of an act or omission by the Defendants outside this State when, at or about the time of the injury, Defendants were engaged in the solicitation or service activities within the State of Florida; or,

   d. in the alternative, Defendants have engaged in substantial and not isolated activity in the State of Florida.

10. Moreover, Defendants have purposefully availed themselves of the jurisdiction of this Court by transacting business in this District and the State of Florida concerning the conduct and activities at issue.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims stated in this Complaint or the tortious acts committed by each of these Defendants, and set forth herein, occurred in this district.

## GENERAL ALLEGATIONS

12. On or about March 1, 2015, Andrew Pargh contacted Goss RV and Carter regarding the rental of a recreational vehicle motorhome to be used to take a cross-country trip to visit family and friends and video-record these encounters to create an archive of his life. Mr. Pargh made it clear to Goss RV and Carter (and also KGoss on or about May 4, 2015) that this was to be a five-star luxury trip of a lifetime, and that Mr. Pargh had no prior experience in such travel or the use or rental of recreational vehicle motorhomes.

13. Among other things, Goss RV's website, http://gossrv.com, represents:

   a. "We provide luxurious mini-mansions on wheels and handle the details, so you can enjoy your rental."

   b. "Prevost Motorhomes Deliver Luxury

   If you are re looking for the global standard in luxury motorcoach travel, look no further than Prevost motorhomes for your rental experience. These beautiful mini-mansions on wheels have more amenities than many five-star luxury suites in Americas top resorts."

   c. "Experience the Goss RV classic level of white glove service and support."

   d. "With a Prevost or Country Coach luxury rv rental, your days of compromising are over."

14. A second Goss RV website, http://www.gossluxuryrvrental.com/goss-rv/ represents, "We take care of the details so you don't have to."

15. Shortly thereafter, Goss RV salesperson, Defendant Carter, responded to Mr. Pargh's inquiry via email sent to Mr. Pargh in Florida, and recommended a number of motorhomes from the advertised listing of makes and models of motorhomes available on Goss RV's website (http://gossrv.com/) for Mr. Pargh's contemplated road-trip. He also highly recommended that Mr. Pargh rent the Prevost XL make and model.

16. On or about March 8, 2015, Mr. Pargh traveled to DeLand, Florida to tour three separate Prevost models recommended by Carter and stored by Goss RV in a facility there.

17. On that day and at Carter's urging, Mr. Pargh took a 'test ride' in a 2011 Prevost XL model, the motorhome which would become the "Vehicle," to the City of Daytona Beach, Florida and on the surrounding highways with a driver provided by Goss RV.

18. During this ride, Mr. Pargh noticed a problem with the audio-visual ("A/V") system on the Vehicle, but the Goss RV driver informed Mr. Pargh that Goss RV was in the process of replacing the A/V system, as well as adding a second television to the bedroom area of this motorhome.

19. During the course of many conversations with Carter and KGoss, Mr. Pargh expressed his desire to rent a "top-notch" "first class" luxury motorhome and equipment for his road trip and to do so from a company that would deliver "a first-class, five-star" experience.

20. Goss RV, KGoss, and Carter repeatedly confirmed to Pargh Travels through Mr. Pargh that the Vehicle was such a product, and that they would provide park reservations and secure safe parking for the Vehicle at the highest quality and safest locations on a set itinerary, representing that they do this type of a trip all of the time and know all of the right places to stay/camp across the country. Goss RV name-dropped the names of well-known celebrities the Pritzker Family and Taylor Swift as satisfied customers and evidence of its expertise. KGoss stated that Taylor Swift had previously used the Vehicle, and he and Goss RV had hotel magnates as customers.

21. During these conversations, Mr. Pargh also informed Carter that he would be hiring a personal stewardess, who had experience in the yachting industry, to accompany him on this trip.

22. In the midst of planning this trip, Mr. Pargh and Carter engaged in email conversations regarding planning for the trip. In one such email, dated March 14, 2015, Mr. Pargh wrote to Carter and stated that: "During the trip, on each overnight stay (while on the road or at a destination), I'll use your expertise in making the suggestions and reservations for top tier/five star RV parks. Having you provide links to the various RV resorts will be helpful…I'll rely on your advice on this topic as well as the best RV parks to stay during this adventure."

23. On or about March 27, 2015, in reliance upon Goss RV's and Carter's representations, Pargh Travels entered into a Motorhome Rental Agreement and an Addendum (the "Agreement") with Goss RV whereby Pargh Travels agreed to rent, *inter alia*, the Vehicle, a separate automobile to be towed behind the vehicle and used for short trips and other events (the "Tow Car"), and the services of a driver for the Vehicle, along with other travel-related services such as booking of reservations at resorts and campgrounds to park the Vehicle and an itinerary from Goss RV (the "Vehicle Charter") for a road trip commencing on June 22, 2015 (the "Start Date") and terminating on August 6, 2015 (the "End Date"). In exchange for the Vehicle Charter, Pargh Travels agreed to pay Goss RV a total of one hundred ten thousand dollars ($110,000.00) plus two dollars and fifty cents ($2.50) for every mile driven over 10,000 miles and two thousand three hundred dollars ($2,300.00) for every subsequent day or portion of each subsequent day beyond the end date of the Vehicle Charter. This sum was payable in the form of a security deposit (the "Deposit") in the amount of twenty thousand dollars ($20,000.00), a pre-payment due on the date of the Agreement (the "Pre-Payment") in the amount of seventy-six thousand nine hundred dollars ($76,900.00) and the balance of payment due on May 4, 2015 in the amount of seventy-six thousand nine hundred dollars ($76,900.00).

24. Pursuant to the Agreement, Pargh Travels was to take delivery of the Vehicle in Palm Beach Gardens, Florida on the Start Date and return the Vehicle to Palm Beach Gardens, Florida on the End Date.

25. On April 10, 2015, Pargh Travels, LLC wrote and delivered a check in the amount of seventy-six thousand, nine hundred dollars ($76,900.00) payable to Goss RV, Inc. as the agreed-upon Pre-Payment for the Vehicle Charter.

26. Pursuant to the Addendum to the Agreement, Goss RV "will make all RV [recreational vehicle] park reservations and secure safe parking for the Vehicle. Park reservations will be made at the highest quality and safest locations available."

27. Goss RV represented to Mr. Pargh that these advance RV park reservations for the Vehicle Charter would be made in April and May 2015 before the increased demand during the summer vacation season and reservations become unavailable.

28. Because the Agreement price was affected by the number of miles driven, the itinerary prepared by Goss RV and Carter and presented to Pargh Travels was a material inducement upon which Pargh Travels relied in entering into the Agreement. Further, the representations as to the availability of the highest quality and safest locations for the advance RV park reservations were a material inducement to Pargh Travels and this materiality was known to Goss RV and Carter.

29. It was represented by Goss RV and Carter, and the Agreement specified, that the Vehicle Charter would begin on June 22, 2015, and that at least two weeks prior to that date, Goss RV would make the Vehicle available for a "trial run to insure that the Vehicle, driver, digital, telecommunications and networking equipment are consistent with the quality, condition and effectiveness contracted for."

30. Also, pursuant to the Addendum of the Agreement and in exchange for the agreed-upon price of two thousand three hundred dollars ($2,300.00) per day, Mr. Pargh scheduled a so-called "trial run" trip in the Vehicle for two days and one night in order to: (1) verify that Goss RV had fixed the electronics issues he observed on the earlier "test ride," (2) meet the two drivers Goss RV had designated for the road trip, (3) allow the stewardess to become acquainted with the Vehicle so she could begin to make provisions for the road trip, and (4) obtain his first professional, behind-the-wheel motorhome driving test from the two drivers. Goss RV represented to Mr. Pargh that the two drivers were Prevost-certified and would perform the driving lesson and test of and for Mr. Pargh as part of this "trial run" trip.

31. On April 21, 2015, Pargh Travels, LLC wrote and delivered a check in the amount of six thousand four hundred seventy-six dollars ($6,476.00) payable to Goss RV, Inc. as the agreed-upon price for this "trial run" trip.

32. On May 4, 2015, the Goss RV drivers picked up Mr. Pargh near his home and then picked up his stewardess in Hollywood, Florida.

33. Upon entering the vehicle, Mr. Pargh discovered that the electronics issues he had previously identified to Goss RV had not been repaired, although an additional television had been added to the bedroom area.

34. In addition to the A/V system malfunctions, the main cabin's air conditioning unit was not fully functional, multiple appliances inside the Vehicle did not work, and there was a foul odor emanating from the Vehicle's plumbing system. While the addendum of the Agreement required a cable television hookup, it was apparent to Mr. Pargh that no such system had ever been installed on the Vehicle.

35. On May 4, 2015 and during this first "trial run," Mr. Pargh contacted Carter via phone and email to inform him of the above malfunctions and issues with the Vehicle. Carter, in turn, informed KGoss of these concerns and KGoss made representations to Mr. Pargh via email and phone which included the representation that: "We have a plan to work on the salon TV once you get to Hollywood[, Florida]. I will have our tech support team checking the ac question at that time too."

36. As this "trial run" got underway, one of the Goss RV drivers informed Mr. Pargh that, because the driver had not been informed of the agreed-upon driving lesson by Goss RV, this driving test would not occur. The other driver went along with this decision and the driving lesson and test did not occur as scheduled and agreed-upon on this first "trial run."

37. Also, during this "trial run," both drivers informed Mr. Pargh that they had not been made aware by Goss RV of the planned itinerary for the Vehicle Charter.

38. Upon informing both drivers of the planned itinerary for the Vehicle Charter, the dates and stopping locations of which had been prepared by Carter, both drivers advised Mr. Pargh that certain legs of the itinerary were not possible given legal limits of driving distances and durations, as per applicable laws. Carter had previously assured Mr. Pargh that the legs of the planned itinerary were appropriate and safe.

39. Due to the legal obstacles identified by these drivers, Mr. Pargh would have to add additional days and mileage to the Vehicle Charter, which, pursuant to the Agreement, would add monetary costs.

40. Additionally, Goss RV provided a Chevy Suburban as the Tow Car, which was brought along for this "trial run" trip. Mr. Pargh's stewardess drove this Tow Car and reported that it was filthy, unstable, and unsuitable for the Vehicle Charter.

41. Carter later agreed to substitute another suitable vehicle as the Tow Car for the Vehicle Charter.

42. Despite these difficulties, Mr. Pargh agreed to go on a second "trial run" to allow Goss RV a second-chance to correct the issues Mr. Pargh identified and expressed to Goss RV, KGoss, and Carter regarding the Vehicle.  Goss RV, KGoss, and Carter represented to Pargh Travels that each of the electronic, air conditioning, appliance, television, safety and other issues and deficiencies which had been experienced and identified on the first trial run, were corrected.

43. Goss RV, KGoss, and Carter also represented that the driving lesson and test of Mr. Pargh would occur on the second day of this second "trial run" trip.

44. On May 27, 2015, Mr. Pargh and the stewardess (who Mr. Pargh flew in for the occasion) boarded the Vehicle near Mr. Pargh's Palm Beach Gardens, Florida residence for this second "trial run" and headed to Port St. Lucie, Florida.

45. Despite the representations of Goss RV, KGoss, and Carter to the contrary, the Vehicle's A/V system and air conditioning were still malfunctioning.

46. Additionally, the sheets and bedding on the Vehicle were a mess and were in an unsuitable condition, and other accoutrements (such as towel hooks, shower caddies, etc.), which Mr. Pargh had requested as part of the luxury experience represented by Goss RV and Carter previously, and which Goss RV and KGoss had represented would be added to the Vehicle before this second "trial run," had not been installed.

47. Also during this second "trial run," it was discovered that the Vehicle's backup monitor, which was trained on the Tow Car at the rear of the Vehicle, would periodically malfunction.

48. While stopped at a Port St. Lucie campsite for the night, the Vehicle's air conditioning unit inexplicably failed while the Vehicle's electrical system otherwise remained operational.

49. During the next day, the one Goss RV driver on this trip decided to conduct the driving lesson and test of Mr. Pargh in a crowded parking lot of a Walmart store in Port St. Lucie.

50. During this driving lesson and test, Mr. Pargh noticed that the Tire Pressure Monitor System was malfunctioning such that tire pressure could not be monitored thereby creating an additional safety issue for the Vehicle.

51. During the week of June 7, 2015, Mr. Pargh continued to receive phone calls from one of the Goss RV drivers who had taken over making the advance RV park reservations for the Vehicle Charter after the first "trial run" had been completed.

52. During these phone calls, the Goss RV driver advised Mr. Pargh of certain availability problems with certain stops on the itinerary.

53. In previous discussions with Goss RV and Carter, and this Goss RV driver, Mr. Pargh had informed each that there were planned visits to certain locations on dates which could not be changed.

54. One such visit was originally planned for Breckenridge, Colorado from July 3 to July 5, 2015 for Mr. Pargh to visit his friends and family.

55. The Goss RV driver informed Mr. Pargh that he could not obtain a reservation for the Vehicle in Breckenridge, Colorado for July 3 and Goss RV suggested a back-up plan that would involve the Vehicle staying in Denver, Colorado on July 3 and Mr. Pargh taking the Tow Car to make a brunch in Vail on July 4 (a driving distance of approximately 81 miles) and then

11

drive to Avon, Colorado (a driving distance of approximately 10 miles) for dinner with his sister that evening.

56. On or about June 12, 2015, Mr. Pargh received a FedEx package from Goss RV which, *inter alia*, included a revised, printed itinerary for the Vehicle Charter.

57. Accompanying this revised itinerary, Goss RV had included reservation receipts which showed that the reservations had first been made in June 2015 and not in April 2015, as Goss RV had represented to Mr. Pargh.

58. Goss RV, KGoss, and Carter represented to Mr. Pargh that Pargh Travels could put a graphic decal featuring the website ATOAL.com to be printed, applied to, and later removed from the side of the Vehicle at the end of the Vehicle Charter. KGoss recommended to Mr. Pargh to hire Walter D'Andrew Bodyworks, LLC to install this graphic decal. In reliance upon these representations by Defendants and Defendants' representations that the Vehicle would be up to the specifications for the Vehicle Charter, Pargh Travels, on or about June 1, 2015, wrote and delivered a check in the amount of six hundred dollars ($600.00) payable to Walter D'Andrew Bodyworks, LLC as the agreed-upon payment for this graphic decal and its installation to the side of the Vehicle and removal from the Vehicle.

59. In connection with the planned stop in the New York City area, Goss RV and Carter represented to Mr. Pargh that the Vehicle would be parked in a campground in the vicinity of Jersey City, New Jersey and Mr. Pargh could use a car service for trips into New York City. However, as part of the final itinerary, Goss RV and Carter informed Mr. Pargh that it could not obtain a reservation at this campground and that the Vehicle would be parked at a Goss RV facility approximately 90 miles away from Jersey City, New Jersey.

60. In connection with a planned stop at a New Hampshire resort, Goss RV, through one of its drivers, informed Mr. Pargh that it could not obtain a reservation at this resort and the location was changed. On the bases of these changes and unfulfilled representations by Goss RV, Mr. Pargh canceled this stop on his trip.

61. In connection with a planned stop at an oceanside resort in Santa Barbara, California for July 17-19, 2015, Goss RV changed the resort for this stay on the printed itinerary received by Mr. Pargh via FedEx on or about June 12, 2015 (as discussed above).

62. The representations on Goss RV's two websites were false and justifiably relied upon by Pargh Travels in conjunction with the additional verbal and written representations made to it by the Defendants. The Vehicle was not the luxurious mini-mansion; Goss RV did not handle the details as promised, did not provide a classic level of white glove service or the global standard in luxury motorcoach travel, or otherwise "take care of the details" so Pargh Travels did not have to. Although it was represented that "your days of compromising are over," Defendants forced Pargh Travels to make numerous compromises on sub-standard, non-luxury locations and the itinerary upon which Defendants induced Pargh Travels to rely.

63. All representations of KGoss and Carter were within the scope of their authority as agents of Goss RV.

64. Defendants had available superior knowledge and position to have known the consequences of their representations and omissions and their effect on Pargh Travels; however, the representations and omissions were made nonetheless.

65. Defendants knew or should have known that the Defendants' failures to disclose and correctly represent the facts induced a false belief in Pargh Travels which induced Pargh Travels to enter into the Agreement.

66.     Pargh Travels' acceptance of the Agreement was made in material and justifiable reliance upon the material representations of Defendants which representations turned out to be false and fraudulent.

67.     As a result of Defendants' conduct, Pargh Travels has suffered damages, has been forced to retain attorneys, and is obligated to pay its attorneys a reasonable fee for their services in this action.

## COUNT I – FRAUD

68.     Paragraphs 1 through 67 above are incorporated and re-alleged as if fully set forth herein, and it is further alleged:

69.     In addition to the foregoing representations, Defendants misrepresented certain material facts to Plaintiff, to wit:

   a. The 2011 Prevost XL DB Motorhome (the "Vehicle") was represented to be consistent with and compliant to the standards and requirements communicated, both orally and in writing;

   b. The Vehicle did not provide the level of comfort required, and represented;

   c. The Vehicle did not provide the degree of safety, in terms of stability and handling, power system, electrical systems, air conditioning systems, required, and Goss RV, KGoss and Carter represented that their proposed itinerary for the Vehicle Charter involved appropriate, safe, and legal durations and distances of driving between planned stops, while these durations and distances were not appropriate, safe, or legal;

    d.    Goss RV and Carter made the RV park reservations for overnight stops on the itinerary in June 2015, once many parks had already been reserved by other customers when Goss RV and Carter had represented that these reservations would be made in April and May 2015;

    e.    Goss RV and Carter made repeated representations that it would obtain RV park reservations at a number of specific locations, including Vail, Colorado, Jersey City, New Jersey, and resorts in New Hampshire and Santa Barbara, California, only to fail to do so and change the locations, to the detriment of Plaintiff in time and expense;

70. Defendants knew or should have known of the falsity of the above statements when made because Defendants were in possession of knowledge that it would not perform in accordance with its representations to Plaintiff.

71. Defendants intended that their representations would induce Plaintiff to rely thereupon so that Plaintiff would enter into the Agreement, pay the Deposit and Pre-Payment to Goss RV, and suffer injury in the form of damages.

72. Plaintiff was justified in relying on Defendants' misrepresentations because Defendants had exclusive control over the conditions of the subjects of its representations and the reasons given by Defendants for Plaintiff to rely on these representations were plausible.

73. Plaintiff suffered injury in justifiable reliance on Defendants' misrepresentations in the form of, *inter alia*, the loss of the Deposit and Pre-Payment amounts, cost of labor, lost revenue, and damage to its business reputation.

**WHEREFORE,** Plaintiff Pargh Travels, LLC demands judgment against Defendants, jointly and severally for compensatory and consequential damages, together with interest,

attorney's fees pursuant to § 57.105, Fla. Stat., costs and such other relief as may be just and proper.

## COUNT II – NEGLIGENT MISREPRESENTATION

74. Paragraphs 1 through 73 above are incorporated and re-alleged as if fully set forth herein, and it is further alleged:

75. Defendants' misrepresentations and failures to disclose to Pargh Travels were misrepresentations of material fact, as detailed above.

76. Defendants knew or should have known that the Defendants' representations were false when made or the Defendants negligently made those representations without knowledge of their truth or falsity.

77. Defendants intended for their representations and failures to disclose to induce Pargh Travels to rely and act on the representations and/or and failures to disclose.

78. Plaintiff was justified in relying on Defendants' misrepresentations because Defendants had exclusive control over the conditions of the subjects of their representations and the reasons given by Defendants for Plaintiff to rely on these representations were plausible.

79. Plaintiff suffered injury in justifiable reliance on Defendants' misrepresentations in the form of, *inter alia*, the loss of the Deposit and Pre-Payment amounts, cost of labor, lost revenue, and damage to its business reputation.

80. At the time the statements and failures to disclose were made, Defendants knew that the statements were false, failed to properly determine whether the statements were true or false, and were in a special situation and possessed such knowledge that it was their duty to know the truth or falsity of the representations which they made.

81. The Defendants made these representations in an absolute, unqualified, and positive manner.

82. The misrepresentations of Defendants and their failures to disclose were undertaken intentionally or with such recklessness or lack of care as to constitute a conscious disregard or indifference to Pargh Travels' rights.

**WHEREFORE,** Plaintiff Pargh Travels, LLC demands judgment against Defendants, jointly and severally for compensatory and consequential damages, together with interest, attorneys' fees pursuant to § 57.105, Fla. Stat., costs and such other relief as may be just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues triable as of right by a jury.

Dated: June 25, 2015

**DUANE MORRIS LLP**
*Counsel for Plaintiff*

By: /s/ Steven D. Ginsburg
Steven D. Ginsburg
Florida Bar No.: 218723
SDGinsburg@duanemorris.com
1075 Peachtree Street, N.E., Suite 2000
Atlanta, Georgia 30309-3929
Telephone: (404) 253-6900
Facsimile: (404) 745-0971